Argued May 19; reversed June 22, 1937

# In re SCHEIN

(69 P. (2d) 293)

*H. E. Slattery*, of Eugene (Slattery & Slattery, of Eugene, on the brief), for appellant.

*Donald Young*, Deputy District Attorney, of Eugene (L. L. Ray, District Attorney, of Eugene, on the brief), for respondent.

CAMPBELL, J. On June 4, 1936, and for some time prior thereto, Emil Schein and his two children, Katherine, 14 years of age, and Helen, 11 years of age, were residing on a farm near Noti, Lane county, Oregon. The children assisted their father in working the farm and keeping house for him. Their home consisted of a two-room house located between three and four miles from the nearest school. During the winter season, the road leading to the school was very muddy and the children did not attend school. The school district refused to furnish transportation for the children. On the above mentioned date, a petition was filed in the county court of Lane county as follows:

"Your petitioner, George Caldwell, a reputable person and resident of said county, respectfully represents to your honor that Katherine and Helen Schein, Minors of the ages of about 14 and 11 years, and now within said County of Lane, State of Oregon, and are dependent children in this that they the said Katherine and Helen Schein have not a suitable place in which to live, are not receiving treatment suitable to children of their ages, and further that Helen has been kept out of school

by the father Emil Schein and said children have not had proper parental care, and that Mrs. George Smith of Cathlamet, Washington, and Emil Schein are the parents of the above named children and said children are in the official custody of the father.

WHEREFORE, your petitioner prays this honorable Court to inquire into the alleged dependency of said children and into the truth of the matters contained in pursuance of the statute in such cases made and provided, and to make such order in the premises as to this honorable Court may seem meet,   *   *   *.''

A hearing was had before the juvenile court. On June 10, 1936, the said court made and entered an order declaring Helen Schein to be a ward of the court taking her from the custody of her father, and committing her to the custody of the probation officer of the county, Perry H. Price. It appears that she was thereafter placed in the custody of Mr. Amor Emerson with whom she has since resided. No order was made relative to Katherine Schein and we need not consider her case further.

Thereafter the father, Emil Schein, appealed to the circuit court for Lane county where, on November 19, 1936, the case was tried in said court before the court and jury. After hearing the evidence, arguments of counsel and instructions of the court, the jury returned a special verdict finding that Helen Schein was a dependent child, and judgment was thereafter entered on said verdict that Helen Schein ''is hereby declared to be a dependent child''. She was then remanded to the custody of the juvenile court. From such judgment and order, the father, Emil Schein, appeals.

It is contended by respondent that, because this matter was tried to a jury and the jury by its verdict found that Helen Schein was a dependent child, this

court may not re-examine that fact nor set the judgment aside unless we can say as a matter of law that there is no evidence to support the verdict.

Without passing on that question as to whether article 7, section 3, of the constitution, as adopted November 8, 1910, applies to this kind of a case, an examination of all the testimony warrants the court in saying that there was no competent or substantial evidence to justify the verdict of the jury.

The statute defines a dependent child as follows:

"Persons of either sex under the age of eighteen years, who for any reason are destitute, homeless, or abandoned; or are dependent upon the public for support; or have not parental care or guardianship; * * * or whose home by reason of neglect, cruelty, drunkenness, or depravity on the part of parents, guardians, or other persons in whose care it [they] may be is an unfit place for such children; * * * whose parents * * * fail to exercise proper parental discipline and control over them are classed as neglected children. It shall be the duty of courts and other public officers to labor with the parents or guardians of such children, and if possible induce them to perform their neglected duties. Subsequent to suitable efforts to compel the parents or guardians to rectify said neglect, and in event of the failure of such efforts, neglected children shall be classed as dependents." Oregon Code 1930, § 33-619.

The petition was prepared by the probation officer, who does not appear to have been an attorney. The petition is not a model, but is probably sufficient after judgment, and no motion or demurrer having been interposed thereto in the lower court.

■ The statute defines three classes of dependent children: The first class has reference to children who have no home, no parents or guardians to care for them;

children who "are destitute, homeless, or abandoned"; "dependent upon the public for support"; "or have not parental care or guardianship".

This part of the statute undoubtedly refers to children who have been abandoned by their parents and have no guardian, or are orphans and whose only way of living are as public charges; that is, they have neither parents, guardians or other persons to take care of them.

Helen Schein, the subject of the instant proceeding, is not included within that category. She is not homeless nor destitute nor in any manner a public charge. She has a parent to take care of her and a home to live in and is furnished plenty of food and sufficient clothing.

The next class then has reference to those children whose home is an unfit place for the child by reason of the "neglect, cruelty, drunkenness or depravity" of the parents.

■ The petition does not allege nor is there any claim made that Emil Schein is or was addicted to the use of intoxicating liquor; the petition does not allege nor is it claimed that there is even a suspicion of any depravity on the part of Emil Schein. There is no evidence of any neglect of this child by her parent. He did not send her to school, but the school district refused to furnish her transportation. The law specially provides that children "over ten years of age whose parents live more than three miles, by the nearest travelled road, from some public school * * *" shall not be required to attend public school: Section 35-2101, Oregon Code 1930. Her education was not neglected. At home she was taught the ordinary branches of learning that are taught in the elementary schools. When she

was taken away from her home and placed in the custody of Mr. Emerson and sent to public school, she was able to take up her studies in the seventh grade. This is above the average for children of that age. In addition to this, she had been taught how to cook and keep house.

· There is no evidence of any cruelty practiced on this child by her father. The purport of the evidence is that she and her sister arose between 6 and 7 o'clock in the morning. After they had their morning meal, and did the necessary work in connection therewith, they were required to study their lessons until noon. After noon they were required to study some. They were not required to study in the evening unless they so desired. The girls were also taught to cook, bake bread and perform the household tasks.

Occasionally they hoed in the garden and once, at least, they helped their father haul manure from the barnyard on a sled. In the summer time, they occasionally went barefoot and wore overalls. They also had shoes and dresses. The overalls were not always so clean nor kept in as good a state of repair as they might have been.

They were required to obey their father and to apply themselves to their studies, and if they failed to do this they were liable to receive corporal punishment. This punishment was not severe and was administered with "rather a small stick", and only when they were disobedient. The girls did not associate very much with the neighbors' children. This is not unusual as the nearest house was about a quarter of a mile away.

Mr. Emerson testified that when Helen came into his custody she seemed to be afraid to allow him to

place his hands upon her. The ordinary girls of that age, and even older, are usually bashful about having strangers place their hands upon them. This is the effect of all the testimony produced by the state; viewed in its most favorable light, and admitting it all to be true, the acts testified to therein do not amount either to cruelty or neglect. The testimony introduced by the defendant did not help the state's cause.

The statute further provides that children, whose parents "fail to exercise proper discipline and control" over them, are classed as "neglected children". The statute then directs, in such cases, that it shall be the duty of the court and its officers "to labor with the parents", and, if possible, induce them to perform their neglected duties. If, after such efforts on the part of the court and its officers, the parents fail to remedy the situation, the children then are classed as dependent children.

There is no evidence tending to show that the child in the instant case comes within that definition of dependency.

■■ It never was the intention of the legislature to take a child away from its parent because the parent was financially unable to provide a home with all the modern appliances and appurtenances that would be found in the ordinary city home. Some of our most highly honored, respected and useful citizens were reared in small cottages and even in log cabins:

> "* * * in fair Virtue's heavenly road,
> The cottage leaves the palace far behind."

The legislature never intended that a parent who enforces proper discipline in the home and gives his child the proper moral training, furnishes sufficient

food, clothing and shelter for it, should be deprived of the custody and control of such child just because someone in better circumstances financially would be able to give that child what society might consider greater advantages than it would receive in its humble home. It is common knowledge that those who are taught to respect parental authority in their early years also conform to the laws of the land and the conventions of society throughout their adult life. "Train up a child in the way he should go: and when he is old he will not depart from it.": Pr. 22:6.

■ There is no competent evidence to substantiate any of the allegations of the petition or to show that Helen Schein is now, or at or before the trial of the cause was, a dependent child. The matter should not have been submitted to the jury.

The judgment of the circuit court will be reversed and the cause remanded with instructions to remand the cause to the county court with instructions to dismiss the petition and return Helen Schein to the custody of her father, Emil Schein. It is so ordered.

BEAN, C. J., and BAILEY and RAND, JJ., concur.